IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER HAYES and JUSTIN HAYES, Individually and as Next Friends of K.H., a Minor,<br><br>Plaintiffs,<br><br>vs.<br><br>SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 07-cv-682-CVE-TLW<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Before the Court is plaintiffs' Motion for Leave to Serve the Supplemental Expert Report of Dr. Anick Bérard, Ph.D. (Dkt. # 445). Defendant filed a response in objection to the motion, and plaintiff filed a reply. (Dkt. # # 465, 469). Plaintiffs' motion is granted in part and denied in part as set forth below.

Dr. Bérard's initial expert report considers "the question of whether paroxetine (Paxil) use during pregnancy increases the risk of cardiovascular malformations in newborns." (Dkt. # 445-2). In her report, Dr. Bérard first sets out a number of "general epidemiologic principles" on which she relies for her opinions. Next, Dr. Bérard summarizes her opinion as follows:

> Current evidences [sic] as described below suggest that the risk of giving birth to a child with cardiovascular malformation following first trimester use of paroxetine is present and can go as high as 3 times higher than what would be expected in the general population. This added risk is likely due to an increase in cardiac defects, especially septal defects.

Id. Dr. Bérard's reference to the "evidences [sic] as described below" refers to eight short paragraphs that summarize various studies, each of which, according to Dr. Bérard, found a correlation between the use of paroxetine during pregnancy and birth defects. Id.

After receiving defendant's expert reports (many of which criticize Dr. Bérard's opinions) and defendant's Motion to Exclude Dr. Bérard's opinion testimony, plaintiffs filed the pending motion seeking to supplement Dr. Bérard's report in order to "rebut arguments raised by Defendant's experts." (Dkt. # 445 at 3). Defendant objects to the supplemental report, pointing out that the supplement relies on new materials and that it includes new opinions not contained in the original report. Defendant argues that if plaintiffs' motion is granted, defendant "will be prejudiced in a manner that cannot be cured without significantly disrupting this litigation." (Dkt. # 465 at 15).

The Federal Rules of Civil Procedure require an expert witness to prepare a report "containing a complete statement of all opinions to be expressed." Fed. R. Civ. P. 26(a)(2)(B). A party's failure to do so results in the exclusion of any opinions not properly disclosed, unless the party's failure is harmless or substantially justified. See Fed. R. Civ. P. 37(c)(1); Keach v. United States Trust Co., 419 F.3d 626, 641 (7th Cir.2005). In this regard, "a supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)." Cook v. Rockwell Corp., 580 F.Supp.2d 1071, 1170 (D. Colo. 2006). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." Id. (citing Beller v. United States, 221 F.R.D. 689, 695 (D.N.M. 2003)). "This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a)." Id. In addition, permitting late supplementation of expert reports may have the effect of denying the opposing party the opportunity to file a meaningful Daubert motion as to

2

questionable expert testimony.  See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Public Schools, 455 F.Supp.2d 1286, 1299 (D.N.M.2006).

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (quoting Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir.1996)).  Moreover, the district court is not required to "make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."  Id. (citing United States v. $9,041,598.68, 163 F.3d 238, 252 (5th Cir.1998).  Nonetheless, the court should be guided by the following factors:  (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.  Id.

To a certain extent, Dr. Bérard's supplemental report does contain new and additional opinions not disclosed in her initial report, and it does attempt to "strengthen" and/or "deepen" the opinions expressed in the original report.  In addition, Dr. Bérard clearly relies on new materials that were not cited in the text of her original report.  In this respect, plaintiffs' failure to comply with Rule 26 is neither harmless, nor substantially justified.  Were the Court to grant plaintiffs' motion, defendant would be prejudiced, since its attorneys could not have prepared to question Dr. Bérard regarding materials that were not specifically relied on in her report, and defendant could not have provided those new materials to its experts prior to the completion of their reports.  Allowing the use of new materials even to support existing opinions could trigger an endless wave of supplemental reports and the need for additional depositions, all of which would be costly for defendant.  In addition, in a large and complex case such as this one, this sort

3

of additional discovery could easily impact the trial date, even given the four month period between the filing of plaintiffs' motion and the trial. It is this type of supplementation that Rule 37 is designed to prevent. See Cook, 580 F.Supp.2d at 1170; Miller, 455 F.Supp.2d at 1299.

On the other hand, to the extent that the supplemental report relies on materials that were cited in the text of her original report, the supplementation does little more than explain, in a manner that would be expected during a deposition or at trial, the eight studies cited and the reasons she believes they support her opinions.[1] This sort of supplementation, at least in this instance, is both harmless and not unduly prejudicial to defendant. Although the undersigned doubts that the opinions expressed in the supplemental report and in Dr. Bérard's deposition have been meaningfully altered, strengthened, or deepened (based on further citation to materials that were already cited in the text of her original report) to such an extent that they were not anticipated by defendant's counsel, any prejudice to defendant can be cured by a brief deposition and subsequent supplements by its experts.

Finally, with respect to Dr. Bérard's "new opinions," those opinions do not substantially alter Dr. Bérard's original report (so long as they are based solely on the materials cited within the text of her original report). Thus, any violation by plaintiffs of Rule 26(a) is harmless, is not unduly prejudicial to defendant, and can be easily cured.

Based on the foregoing, and after weighing the four factors in Woodworkers' Supply and considering the admonitions of Cook and Miller, the Court rules as follows:

1. Plaintiffs shall remove from the supplemental report all references to materials and/or studies that are not cited in the text of the original report. Dr. Bérard may not rely on any such materials or studies.

---

[1] In fact, at least some of the issues addressed in Dr. Bérard's supplemental report were the subject of questioning by defendant's counsel during Dr. Bérard's deposition. (See Dkt. #469-8).

4

2. Defendant's objection to Dr. Bérard's statements in her supplemental report that Paxil "does cause" cardiovascular malformations or cardiac defects is overruled. Defendant argues that Dr. Bérard is changing her opinion when she uses the words "does cause" rather than "increased risk." Defendant clearly understood, based on the questions its counsel asked of Dr. Bérard during her deposition and the statements in its Motion to Exclude, that her purpose was to issue a general causation opinion. The fact that she stated her opinion in terms of "risk" rather than "cause" is a distinction without a difference.

3. Dr. Bérard's original report does not reference the specific defects alleged in this case. Rather, her initial report refers only to "cardiovascular malformations" or "cardiac defects, especially septal defects." However, it appears that these defects would include, but not be limited to, the defects in this case: right ventricular outflow tract obstruction ("RVOTO"), and "pulmonary atresia, intact ventricular septum ("PA-IVS"). Thus, these more specific references will be allowed in the supplemental report. However, it will be incumbent on plaintiff to establish during the Daubert hearing both (1) that the studies cited by Dr. Bérard specifically support her opinions as to RVOTO and PA-IVS, and (2) that RVOTO and PA-IVS are cardiovascular malformations and/or cardiac defects.

4. The Unknown Causes section (paragraph 15) of Dr. Bérard's supplemental report is allowed as appropriate rebuttal, but only because this section is brief and limited in scope, and because Dr. Bérard could not have reasonably anticipated the need to include it in her original report. If defendant wishes to re-depose Dr. Bérard, by telephone, regarding paragraph 15, it may do so without further leave of court.[2]

SO ORDERED this 22nd day of October, 2009.

_____
T. Lane Wilson
United States Magistrate Judge

---

[2] This Opinion and Order does not prejudice defendant's right to seek to re-depose, consistent with this Opinion and Order, Dr. Bérard on other aspects of her supplemental report.