UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JENNIFER HAYES and JUSTIN HAYES,** individually and as next friends of K.H., a minor child, <br><br> Plaintiffs, <br><br> v. <br><br> **SMITHKLINE BEECHAM CORPORATION** doing business as GlaxoSmithKline, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 07-CV-0682-CVE-TLW |

## OPINION AND ORDER

Now before the Court are defendant's motions in limine to: "Implement Certain Trial Procedures to Protect GSK's Due Process Rights With Regard to Punitive Damages" (Dkt. # 591); and "Exclude Evidence of, or Reference to, Defendant's Net Worth or Financial Condition" (Dkt. # 612).[1]

### I.

Plaintiffs Jennifer and Justin Hayes (the Hayeses) filed this suit on behalf of themselves and their minor child, K.H. See Dkt. # 2. Defendant SmithKline Beecham Corporation[2] (GSK) is a corporation that designed, manufactured, and marketed the prescription pharmaceutical paroxetine

---

[1] Plaintiffs have not yet responded to these motions, but no response is necessary.

[2] Defendant's name apparently has changed during the course of this litigation. Defendant's motions are each titled "Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline's Motion in Limine . . . " Dkt. ## 591, 612. However, the documents refer to defendant as "GlaxoSmithKline LLC, formerly SmithKline Beecham Corp. d/b/a GlaxoSmithKline. If defendant's name has changed, it is directed to file formal notice thereof with the Court.

hydrochloride, which is marketed and sold in the United States under the trade name "Paxil." Dkt. # 6, at 2.

K.H. was born in December 2005 with a heart defect. Id. at 1, 4; Dkt. # 512, at 25. The Hayeses allege that Jennifer took Paxil while pregnant. Dkt. # 2, at 3. The Hayeses allege that K.H.'s heart defect was caused by Paxil, and that GSK knew or should have known of Paxil's potential teratogenic effects at the time Jennifer was taking the drug. Dkt. # 6, at 4.

The Hayeses brought claims against GSK for manufacturer's product liability and negligence.[3] They also alleged that GSK "demonstrated a reckless disregard for the health, safety, and welfare of others, including [themselves] and K.H." and assert a claim for punitive damages. Dkt. # 2, at 10.

**II.**

Two of GSK's motions in limine are at issue here. In the first (Dkt. # 591), GSK requests an order excluding any evidence or argument concerning alleged harm inflicted by GSK on non-parties, excluding any evidence or argument concerning alleged conduct by GSK outside the state of Oklahoma, and prohibiting the Hayeses from requesting an amount of punitive damages exceeding the compensatory damages requested or awarded. In the second (Dkt. # 612), GSK requests an order excluding any evidence or argument regarding GSK's financial condition, or in the alternative, limiting such evidence to that attributable to GSK's Paxil-related activities in Oklahoma.

---

[3] The Hayeses initially also asserted claims for breach of warranty and deceptive trade practices. In their response to GSK's motion for summary judgment (Dkt. # 555), the Hayeses relinquished their breach of warranty and deceptive trade practices claims. Dkt. # 555, at 30.

The Court will conduct the trial of this matter in two phases. During Phase I, the jury will hear issues relating to liability for actual damages only. If appropriate, the jury will be given a special interrogatory to answer with regard to the conduct of defendants. If appropriate based upon that answer, the Court will proceed to Phase II, during which punitive damages will be considered. Punitive damages and similar terms will not be discussed during Phase I of trial; therefore, some of GSK's concerns may be moot if the jury does not find that it acted with reckless disregard of the safety of others.

A.      Evidence or argument concerning alleged harm to non-parties

GSK argues that the Hayeses should be precluded from referencing any alleged harm to third parties because a defendant cannot constitutionally be punished for harm to non-parties.

In Philip Morris USA v. Williams, 549 U.S. 346 (2007), the Supreme Court held that the Due Process Clause prohibits using a punitive damage award to punish a defendant for injuries to nonparties.[4] However, the Supreme Court stated that "a plaintiff may show harm to others in order to demonstrate reprehensibility. . . . Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible . . . ." Id. at 355, cf. Hicks v. Cadle Co., Nos. 08-1306, 08-1307,

---

[4] GSK argues that Oklahoma's punitive damages statute, OKLA. STAT. tit. 23, § 9.1, is unconstitutional under Philip Morris, because it contemplates harm to third parties as part of a punitive damage award. Dkt. # 591, at 6. The Court previously addressed this issue in Moody v. Ford Motor Co., 506 F. Supp. 2d 823 (N.D. Okla. 2007). As it did in Moody, the Court notes that Phillip Morris will be applicable to this case and will affect the presentation of evidence related to the Hayeses' claim for punitive damages. However, any application of the statute would be purely speculative at this point, as no jury has found that GSK acted with the requisite culpability to trigger punitive damages. The Court reiterates its statement in Moody: "[w]hile the constitutionality of § 9.1 is ripe for judicial or legislative review, that issue is not before the Court at this time and the Court will not issue an advisory opinion on the constitutionality of the statute." 506 F. Supp. at 849 n.14.

08-1435, 2009 WL 4547803, at *10 (10th Cir. Dec. 7, 2009) (unpublished)[5] ("[e]vidence of attacks on others . . . is relevant to show that defendants intended to harm [plaintiff]") (citing Philip Morris).

GSK argues that there is a substantial risk that a jury will take harm to third parties into account when determining the amount of punitive damages, even where such evidence is admitted to show reprehensibility only. Dkt. # 591, at 3. However, any such risk in this case will be alleviated by the separation of the actual and punitive damages phases of trial. The separation of the question of culpability from the amount of punitive damages "provide[s] assurance that juries are not asking the wrong question, i.e., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers," Philip Morris, 549 U.S. at 355.

The Court will not, at this time, make a blanket ruling regarding the admissibility of evidence concerning alleged harm to third parties. Any such evidence presented in Phase I of the trial must have some bearing on the Hayses' claim for actual damages. At this time, and given the two-phase trial structure, the Court does not find that admission of hypothetical evidence of alleged harm to third parties would necessarily deprive GSK of due process. This portion of GSK's motion in limine is denied.

B.      Evidence or argument concerning out-of-state conduct

GSK asks the Court to exclude evidence or argument concerning its activities outside of Oklahoma because, under the rule of State Farm Mutual Automobile Insurance Co. v. Campbell, 538

---

[5]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

U.S. 408 (2003), "punitive damages also may not be supported by the defendant's out-of-state conduct." Dkt. # 591, at 3.

To the extent that the Hayses might seek to introduce evidence of GSK's alleged out of state conduct to show <u>actual</u> damages, <u>Campbell</u> is inapplicable. The Supreme Court's holding was limited to the use of out-of-state conduct to support punitive damages. <u>See</u> 538 U.S. at 412 ("[w]e address . . . the measure of punishment, by means of punitive damages, a State may impose upon a defendant in a civil case"). <u>Campbell</u> does not limit the admissibility of out-of-state conduct to show, for example, causation. <u>See</u> <u>Markham v. Nat'l States Ins. Co.</u>, No. Civ.02-1606-F, 2004 WL 3019309, at *5 (W.D. Okla. Dec. 27, 2004) (unpublished) ("evidence of defendant's treatment of its insureds, outside of Oklahoma as well as within Oklahoma, was admissible with respect to liability issues, wholly aside from any matters relating to punitive damages"). As discussed <u>supra</u>, the two-phase trial will alleviate the risk that a jury would punish GSK for alleged out-of-state conduct if such evidence were introduced during the actual damages phase.

With respect to punitive damages, "[l]awful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff." <u>Campbell</u>, 538 U.S. at 422. Therefore, the Court cannot determine at this stage that any hypothetical evidence of GSK's alleged out-of-state conduct would be inadmissible to establish entitlement to punitive damages. This portion of GSK's motion <u>in limine</u> is denied.

C.      <u>Amount of punitive damages requested</u>

GSK asks the Court to prohibit the Hayeses from requesting an amount of punitive damages that exceeds the amount of compensatory damages requested or awarded. GSK argues that both

5

Oklahoma law and the U.S. Constitution restrict the ratio between punitive damages and actual damages to 1:1. Dkt. # 591, at 7-13.

Oklahoma divides punitive damages awards into three categories. <u>See</u> OKLA. STAT. tit. 23, § 9.1. Category I cases are those in which the jury finds that the defendant "has been guilty of reckless disregard for the rights of others." <u>Id.</u> Punitive damages in Category I cases may not exceed the greater of $100,000 or the amount of actual damages awarded. <u>Id.</u> Category II cases are those in which the jury finds that the defendant "has acted intentionally and with malice towards others." <u>Id.</u> Punitive damages in Category II cases may not exceed the greater of $500,000 or twice the amount of actual damages awarded. <u>Id.</u> Category III cases are those in which the jury finds that the defendant "has acted intentionally and with malice towards others" and the court independently finds that the defendant "acted intentionally and with malice and engaged in conduct life-threatening to humans." <u>Id.</u> The statute does not limit the amount of punitive damages available in Category III cases.

In their complaint, the Hayeses allege that GSK "demonstrated a reckless disregard for the health, safety, and welfare of others . . . ." Dkt. # 2, at 10. Based on this pleading, it appears that the Hayeses seek Category I punitive damages only.[6] Since such damages cannot exceed actual damages, the Court need not address GSK's argument that a ratio of punitive to actual damages of greater than 1:1 would violate due process.

However, any ruling on a potential request for punitive damages would be premature at this time. As discussed <u>supra</u>, it is uncertain whether this case will even get to a punitive damages phase.

---

[6] Further, the Court notes that there is no evidence in the summary judgment record to support a finding that GSK acted intentionally and with malice towards others.

At this time, the Court will not place limits on the amount of punitive damages that plaintiffs may potentially request. This portion of GSK's motion in limine is denied.

D.      Reference to GSK's financial condition

In a separate motion in limine (Dkt. # 612), GSK asks the Court to exclude "any testimony, evidence, references, or argument regarding GSK's net worth, wealth, or financial condition." Dkt. # 612, at 6. GSK argues that such evidence is inadmissible with respect to compensatory damages, and "poses too great of a risk of violating the defendant's due process rights" to be admissible regarding punitive damages. Id.

It is difficult to imagine how GSK's financial condition would be relevant to liability or compensatory damages in this case. However, the Court is unable to rule on the admissibility of general categories of hypothetical evidence.[7] At trial, GSK may bring appropriate challenges to the relevance of evidence the Hayses seek to introduce. Because the trial will be bifurcated, there is no substantial risk at this point that any hypothetical evidence introduced at Phase I would improperly affect a potential punitive damages award should the trial proceed to Phase II. If the case were to proceed to Phase II, GSK would be free to renew its objections regarding this evidence's admissibility to show punitive damages. GSK's motion in limine regarding financial condition evidence is denied.

---

[7]     At trial, GSK may make specific objections under Fed. R. Evid. 403 to the relevance of financial condition evidence, but the Court will not sustain a blanket Rule 403 objection to hypothetical evidence at this time.

**IT IS THEREFORE ORDERED** that defendant's "Motion in Limine No. 3 to Implement Certain Trial Procedures to Protect GSK's Due Process Rights with Regard to Punitive Damages" (Dkt. # 591) and "Motion in Limine No. 19 to Exclude Evidence of, or Reference to, Defendant's Net Worth or Financial Condition" (Dkt. # 612) are **denied**.

**DATED** this 14th day of December, 2009.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT